1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9

10

11   DAVID HEFFELFINGER, et al.          )   CASE NO. CV 07-00101 MMM (Ex)
                                         )
12                  Plaintiffs,          )   ORDER GRANTING DEFENDANT'S
                                         )   MOTION TO DECERTIFY THE CLASS
13        vs.                            )
                                         )
14   ELECTRONIC DATA SYSTEMS             )
     CORP., et al.                       )
15                  Defendants.          )
                                         )
16                                       )
                                         )
17                                       )
                                         )
18   ────────────────────────────       )

19        On November 28, 2006, David Heffelfinger, Andrew Hines, and Rodney Dwyer filed this

20   putative class action against Electronic Data Systems Corporation ("EDS") in Los Angeles

21   Superior Court, alleging that EDS had failed to pay overtime to certain classes of information

22   technology workers at its California facilities. EDS removed the action on January 9, 2007,

23   invoking federal jurisdiction under the Class Action Fairness Act of 2005, Pub. L. No. 109-2, §

24   4(a), 119 Stat. 9 (codified in relevant part at 28 U.S.C. § 1332(d)(2)). Plaintiffs allege four state

25   law causes of action: (1) failure to pay overtime in violation of the California Labor Code, (2)

26   failure to provide meal and rest periods in violation of the California Labor Code, (3) waiting

27   penalties for unpaid overtime, and (4) unfair competition in violation of California Business and

28   Professions Code § 17200.

On January 7, 2008, the court certified an overtime class.[1]  Subsequently, the court granted in full EDS's motion for summary judgment.[2]  Plaintiffs appealed the court's order granting the motion for summary judgment.  On July 2, 2012, the Ninth Circuit affirmed that order in part and reversed it in part.[3]  Following remand, EDS filed a motion to decertify the class.[4]  Plaintiffs oppose the motion.[5]

## I.  BACKGROUND

### A.  Initial Motion for Class Certification

Rodney Dwyre was employed by EDS in California as a Systems Engineer and Information Analyst between November 2002 and September 29, 2006.[6]  Although not alleged in the complaint, Dwyre worked at an EDS facility in Rancho Cordova.[7]

On November 5, 2007, plaintiffs filed a motion to certify two classes.[8]  The first was a class comprised of all information technology workers "employed by EDS in the state of

---

[1]Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification ("Class Cert. Order"), Docket No. 46 (Jan. 7, 2008).

[2]Order Granting Defendants' Motion for Summary Judgment ("MSJ Order"); Docket No. 133 (June 6, 2008).

[3]Mandate of 9th Circuit Court of Appeals ("Mandate"), Docket No. 154 (July 2, 2012). Specifically, the Ninth Circuit affirmed the entry of summary judgment in EDS's favor on the claims of plaintiffs Heffelfinger and Hinds, and reversed the entry of summary judgment in EDS's favor on Dwyre's claims.  The court remanded for further proceedings consistent with its order.

[4]Motion for Order to Decertify the Class ("Motion"), Docket No. 158 (Sept. 24, 2012); Reply in Support of Motion for Order to Decertify the Class ("Reply"), Docket No. 163 (Oct. 22, 2012).

[5]Opposition to Motion for Order to Decertify the Class ("Opposition"), Docket No. 161 (Oct. 15, 2012).

[6]Complaint, ¶ 9.

[7]Declaration of Karie Dalton ("Dalton Decl."), ¶¶ 7-9.

[8]Motion for Class Certification, Docket No. 22 (Nov. 5, 2007).

California who were entitled to, but were not paid, overtime in violation of California Labor Code Section 510 and Wage Order No. 4-2001."[9] This class differed from that alleged in the complaint. The court concluded that it was an improper fail-safe class and exercised its discretion to consider whether it was appropriate to certify the overtime class alleged in the complaint, with slight modifications. The class the court considered was comprised of "all current and former employees who were employed within the State of California by [EDS] as Data Base Administrators, Senior Systems Administrators, Systems Engineers, and Information Analysts (hereinafter referred to collectively as 'Information Technology Workers') during the period commencing four years prior to the filing of this Complaint and ending on the date of judgment, who performed work in excess of eight hours in one day and/or forty hours in one week, and did not receive overtime compensation as required by Labor Code, Section 510, and Wage Order No. 4-2001, Section 3 . . ." ("the overtime class").[10] It concluded that such a class satisfied the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) of the Federal Rules of Civil Procedure, as well as the predominance and superiority requirements of Rule 23(b)(3), and certified the class on that basis.[11]

Plaintiffs also sought to certify a class of all information technology workers "who were not provided a ten minute rest period every four hours worked as required by Section 226.7 of the California Labor Code and Wage Order No. 4-2001 within three years of the filing of the complaint in this case."[12] This class too differed from that alleged in the complaint in that it added language limiting the class to those who were not provided legally required breaks, omitted any reference to meal breaks; and changed the class period from four to three years. The court identified numerous problems with the class proposed in the motion, and once again elected to

[9]Plaintiffs' Memorandum of Points and Authorities in Support of their Motion for Class Certification ("Pls.' Mem.") at 2.

[10]Class Cert. Order at 20-23.

[11]*Id.* at 51.

[12]Pls.' Mem. at 3.

3

consider whether it was appropriate to certify the break class alleged in the complaint, eliminating any reference to meal breaks, as plaintiffs' motion did not seek certification of a meal break class.[13]   The rest break class alleged in the complaint consisted of "all current or former employees employed within the State of California by [EDS] as Information Technology Workers, within four years of the filing of this complaint until the entry of judgment, who were not provided a . . . who were not provided a ten minute rest period every four hours worked."[14]   The court ultimately declined to certify the rest break class, noting that plaintiffs had adduced no evidence, and made no argument, that the break class satisfied the numerosity, typicality, commonality and adequacy of representation requirements of Rule 23(a).[15]

Plaintiffs' arguments in support of certification of an overtime class were based primarily on the fact that EDS classified all information technology workers as exempt from state overtime laws.[16]   They alleged that, during the "relevant time period," Dwyre and other members of the overtime class were terminated by or resigned from their employment at EDS.[17]   After they left the company's employ, EDS purportedly failed to pay them the overtime wages in a timely fashion, entitling them to waiting penalties.[18]

### B.   Statutory Framework

"California Labor Code § 510 requires overtime pay for any work over eight hours in one workday, over 40 hours in one workweek, or on the seventh day of work in one workweek subject

---

[13]Class Cert. Order at 25.  In explaining its rationale for considering the rest break class alleged in the complaint, the court noted, *inter alia*, that Dwyre – now the only remaining named plaintiff – did not allege that he had missed rest breaks.  (*Id.*)

[14]Complaint, ¶ 14(B).

[15]Class Cert. Order at 30.  Because the court declined to certify a rest break class, it does not refer to that class further in this order.

[16]Complaint, ¶ 25.

[17]*Id.*, ¶ 42.

[18]*Id.*

to certain exceptions." *Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 241 (C.D. Cal. 2006). The Industrial Welfare Commission ("IWC") is empowered to create exceptions to these statutory overtime requirements for "executive, administrative, and professional employees, provided that the employee is primarily engaged in . . . duties that meet the test of the exemption, customarily and regularly exercises discretion and independent judgment in performing those duties, and earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment." CAL. LAB. CODE § 515(a).

The IWC exercised its authority to promulgate exceptions in Wage Order 4-2001. This order provides that, for the administrative exemption to apply,

> "[t]he employee must (1) perform 'office or non-manual work directly related to management policies or general business operations' of the employer or its customers, (2) 'customarily and regularly exercise[ ] discretion and independent judgment,' (3) 'perform[ ] under only general supervision work along specialized or technical lines requiring special training' or 'execute [ ] under only general supervision special assignments and tasks,' (4) be engaged in . . . the activities meeting the test for the exemption at least 50 percent of the time, and (5) earn twice the state's minimum wage." *Eicher v. Advanced Business Integrators, Inc.*, 151 Cal.App.4th 1363, 1371-72 (2007) (citing 8 CAL. ADMIN. CODE § 11040(A)(2)(a)(I), (b), (d), (f)).

Because these elements are stated in the conjunctive, "each . . . must be satisfied to find the employee exempt as an administrative employee." *Id.* at 1372.

California courts previously construed California's exemption in the same manner as the administrative exemption under the federal Fair Labor Standards Act ("FLSA"). See *Combs v. Skyriver Communications, Inc.*, 159 Cal.App.4th 1242, 1255 (2008) (stating that California's administrative exemption "closely parallels the federal regulatory definition of the same exception, and citing 29 U.S.C. § 213(a)(1) ("any employee employed in a bona fide executive, administrative, or professional capacity" is exempt from the FLSA's minimum wage and hour requirements)); *id.* at 1256 (noting that the federal regulations are "expressly incorporated in IWC

Wage Order No. 4-2001"); see also *Medepalli v. Maximus, Inc.*, No. CIV. S-06-2774 FCD EFB, 2008 WL 958045, *5 (E.D. Cal. Apr. 8, 2008) ("IWC Wage Order No. 4-2001 expressly incorporates certain regulations of the Federal Labor Standards Act ("FLSA") effective as of the date the wage order was issued").

In 2011, however, the California Supreme Court determined that "only those federal regulations specifically cited in [IWC's] wage orders, and in effect at the time of promulgation of these wage orders, [ ] apply in defining exempt duties under California law." *Harris v. Superior Court*, 53 Cal.4th 170, 180 (2011). The wage order states that "[t]he activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.201-205, 541.207-208, 541.210, and 541.215." 8 CAL. CODE REGS. § 11040(1)(A)(2)(f).

The Department of Labor has promulgated regulations defining the scope of the administrative exemption under the FLSA. Unlike the Wage Order, however, the federal regulations include interpretative guidelines that explain the terms they use. 29 C.F.R. § 541.201, for example, "is devoted to explaining the meaning of the phrase 'directly related to management policies or general business operations,' a phrase used in the administrative exemption provisions of [the Wage Order]." *Combs*, 159 Cal.App.4th at 1255. Section 541.201 provides that "[t]o qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.201(a).[19] It distinguishes between work "directly related to assisting with the running or servicing of the business . . . [and] work[ ] on a manufacturing production line or selling a product in a retail or service establishment." *Id.* at 1256. The regulations also identify certain categories of work that constitute "work directly

___

[19]This language is similar to that found in the California regulations, which exempt employees who are primarily engaged in the "performance of work directly related to the management policies or general business operations of [their] employer or [their] employer's customers." 8 CAL. CODE REGS. § 11040(1)(A)(2)(a)(i).

related to management or general business operations." Such work

> "includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; *computer network, internet and database administration*; legal and regulatory compliance; and similar activities." *Id.*, § 541.201(b) (emphasis added).

The federal regulations' interpretive guidance regarding "exercise of discretion and independent judgment with respect to matters of significance" is also expressly incorporated in the Wage Order. See *Combs*, 159 Cal.App.4th at 1256 (citing 29 C.F.R. § 541.202(a) & 8 Cal. Code Regs. § 11040(1)(A)(2)(f)). That regulation explains that "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). "The term 'matters of significance' refers to the level of importance or consequence of the work performed." *Id.* In addition to these definitions, § 541.202(b) provides a non-exhaustive list of factors to be considered in determining whether a given employee exercises discretion or independent judgment. While the regulations require that "discretion and independent judgment" be evaluated "in light of all the facts involved in the particular employment situation . . . ," certain of the factors identified are relevant here: (1) "whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices;" (2) "whether the employee carries out major assignments in conducting the operations of the business;" (3) "whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business;" (4) "whether the employee provides consultation or expert advice to management;" and (5) "whether the employee investigates and resolves matters of significance

on behalf of management." 29 C.F.R. § 541.202(b).[20]

The regulations also address whether an employee can exercise discretion and independent judgment even if he or she lacks final decision-making authority. Section 541.202 states:

> "The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and

---

[20]The section reads in full as follows:
"The phrase 'discretion and independent judgment' must be applied in the light of all the facts involved in the particular employment situation in which the question arises. Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances." 29 C.F.R. § 541.202(b).

independent judgment." 29 C.F.R. § 541.202(c).

In this context, the regulations specifically provide that a management consultant who has "made a study of the operations of a business and who has drawn a proposed change in organization" is exempt despite the fact that his plan is subject to review and revision by his superiors before it is submitted to the client. *Id.*

The regulations also indicate what does not constitute the exercise of "discretion and independent judgment." The employee must do "more than . . . use [his] skill in applying well-established techniques, procedures or specific standards described in manuals or other sources . . . [or] perform[ ] other mechanical, repetitive, recurrent or routine work." 29 C.F.R. § 541.202(e).

In addition to administrative employees, California exempts workers in the computer software field who are paid on an hourly basis if they meet the following criteria: (1) they are primarily engaged in work that is intellectual or creative requiring the exercise of discretion and independent judgment; (2) they are primarily engaged in the application, design, analysis, testing, or creation of computer programs; (3) they are highly skilled and proficient in the theoretical and practical application of specialized information to computer systems; and (4) their hourly rate of pay is not less than a statutorily set minimum which is adjusted yearly to accommodate inflation. See CAL. LAB. CODE § 515.5;8 CAL. CODE REGS. § 11040(1)(A)(3)(h).

California's overtime statutes are remedial in nature. Thus, exemptions are interpreted narrowly to protect employees. See *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal.4th 785, 794 (1999) ("under California law, exemptions from statutory mandatory overtime provisions are narrowly construed"); *Eicher*, 151 Cal.App.4th at 1374 ("The command to interpret exemption statutes narrowly to protect employees leads us to believe such an expansive interpretation is not appropriate"). Furthermore, reliance on an exemption is an affirmative defense, such that the employer bears the burden of proving the employee is exempt. See *Ramirez*, 20 Cal.4th at 794-95.

**C.    Class Certification, Summary Judgment, and Appeal**

As noted, the court's class certification order certified a Rule 23(b)(3) overtime class

9

comprised of information technology workers employed in California by EDS during the period commencing four years prior to the filing of the complaint and ending on the date of judgment, who performed work in excess of eight hours in one day and/or forty hours in one week, and did not receive overtime compensation as required by Labor Code § 510, and Wage Order No. 4-2001, § 3.[21]  The court determined that the overtime claims of class members "present[ed] a common question of law: whether software consultants working for a contractor who provides a service to customers are exempt when performing the work that constitutes that service."[22]  EDS argued that to determine liability, it would be necessary to conduct individualized inquiries concerning the tasks performed by each class member, and thus that common questions did not predominate.  Although acknowledging that individual workers performed unique tasks, the court ultimately concluded that whether there was "a given universe of tasks, none of which falls within the administrative exemption," was a question common to all class members.[23]  As a result, it found that the fact that information technology workers performed varying tasks was "not relevant unless some of the tasks they perform are exempt."[24]  It noted that "[s]hould the court, at a later point, conclude that a portion of the duties performed by information technology workers are exempt, then some amount of individualized inquiry will likely be required."[25]  The court invited EDS to file a motion to decertify the class if it obtained evidence that some of the employees performed exempt work.[26]

---

[21]Information technology workers include Data Base Administrators, Senior Systems Administrators, Systems Engineers, and Information Analysts.

[22]Class Cert. Order at 47.

[23]*Id.* at 46.

[24]*Id.*

[25]*Id.*

[26]*Id.* at 46 n. 89 ("Should the evidence at some point demonstrate that [some workers performed exempt tasks], EDS is entitled to bring the evidence forward to the court and ask that it decertify the overtime class").

Following its certification of an overtime class, on June 6, 2008, the court granted EDS's motion for summary judgment. It concluded that class members performed "identical or virtually identical functions;" that all class members "exercised a significant degree of discretion and independent judgment with respect to matters of significance;" and therefore that all qualified as exempt administrative workers.[27] In an effort to defeat summary judgment, plaintiffs argued that class members performed individualized tasks and that not all performed exempt work. The court noted that this assertion was at odds with the arguments plaintiffs had advanced in support of certification of a class. It observed that plaintiffs' new argument "support[ed] decertification because it undermine[d] the court's earlier conclusion that common issues of law predominate[d], and suggest[ed] that an individual, fact-intensive inquiry [would] be required to determine the exempt or non-exempt status of each member of the class."[28] The court did not address a contemporaneous motion by EDS to decertify the class, however, as its entry of summary judgment rendered the decertification request moot.[29]

Plaintiffs appealed the court's order granting summary judgment in EDS's favor. On July 2, 2012, the Ninth Circuit affirmed the order in part and reversed it in part.[30] The court affirmed the entry of summary judgment in EDS's favor on Heffelfinger's and Hinds' claims, concluding that there were no triable issues of fact as to whether they performed administratively exempt tasks.[31] The court reversed the entry of summary judgment in EDS's favor on Dwyre's claims, however, concluding that while some of the tasks he performed were administrative in nature, others were not. As a result, the court stated, "a reasonable juror could find that Dwyre was not

[27]MSJ Order at 45.

[28]*Id.* at 45, n. 115.

[29]*Id.* at 48.

[30]Mandate at 8.

[31]*Id.* at 5-6.

11

primarily engaged in qualitatively administrative work."[32]   The court relied on the California Supreme Court's decision in *Harris*, which held that:

> "[W]ork qualifies as 'administrative' when it is 'directly related' to management policies or general business operations.  Work qualifies as 'directly related' if it satisfies two components.  First, it must be qualitatively administrative.  Second, quantitatively, it must be of substantial importance to the management or operations of the business.  Both components must be satisfied before work can be considered 'directly related' to management policies or general business operations in order to meet the test of the exemption."   53 Cal.4th at 181-82 (citing 29 C.F.R. § 541.205(a)).

Relying on *Harris*'s qualitative and quantitative approach, the Ninth Circuit concluded:

> "Dwyre's 'duties consisted primarily of computer programming of business applications' for the California Department of Health Services ("DHS"),' another EDS customer.  Although 'computer programmers' and 'systems analysts' can be administratively exempt if they perform duties such as 'the planning, scheduling, and coordination of activities which are required to develop systems for processing data to obtain solutions to complex business, scientific, or engineering problems,' 29 C.F.R. § 541.205(c)(7), the specific kinds of duties enumerated in subsection (a)(2) of the computer software field exemption, see Cal. Lab. Code § 515.5(a)(2), do not in themselves constitute '*qualitatively*' . . . administrative work within the meaning of the administrative exemption."[33]

Additionally, the court noted that Dwyre worked part of the time as a Team Lead, during which periods

> "he spent part of his time assigning and coordinating work, determining schedules, reviewing assignments, and running team meetings.  Although duties like these fall

---

[32]*Id.* at 8.

[33]*Id.* at 7.

within the definition of administratively exempt work, Dwyre asserted he spent 'nowhere near 50% of [his] time' on such activities."[34]

Consequently, the court held that triable issues of fact remained as to whether Dwyre was administratively exempt.[35]

The Ninth Circuit also held that the court had not abused its discretion in certifying an overtime class of information technology workers, but acknowledged – as had the court – that EDS had raised serious issues regarding the fact that information technology workers' job responsibilities varied. It noted that "the district court retain[ed] broad discretion to address problems with the certified class, including the authority to decertify the class, in light of [the] holding on appeal or for other reasons."[36]

Because the court's entry of summary judgment in favor of EDS on Heffelfinger's and Hinds' claims was affirmed, it is clear that they can no longer serve as class representatives.[37] Although EDS appears to contend that the class continues to include Data Base Administrators and Senior Systems Engineers,[38] plaintiffs assert that the only issue is whether Dwyre can continue to represent a class of information technology workers employed as Information Analysts and Systems Engineers.[39] They seek to have the court modify the class definition to narrow it to these two categories of workers.[40]

---

[34]*Id.*

[35]*Id.*

[36]*Id.*

[37]Opposition at 1; Reply at 1.

[38]Reply at 1.

[39]Opposition at 1.

[40]Proposed Order Granting in Part and Denying in Part Defendant's Motion to Decertify a Class, Docket No. 161-1 (Oct. 15, 2012).

## II. DISCUSSION

### A. Legal Standard Governing Decertification Under Rule 23(c)(1)(C)

Rule 23 provides that an order certifying a class "may be altered or amended before final judgment." FED.R.CIV.PROC. 23(c)(1)(C). In *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Service Workers Intern. Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir. 2010), the court noted that "'[e]ven after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.'" *Id.* at 809 (quoting *Gen. Tel. Co. of the Sourtwest v. Falcon*, 457 U.S. 147, 160 (1982)); see *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any time"); *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) (holding that "the district court's approach was entirely appropriate" where it determined that a potential class "conflict was too speculative at the time [of the certification motion] to prevent finding the named plaintiffs to be adequate representatives," but "remained willing to reconsider and decertify the class if . . . there was evidence of an actual conflict"); *Armstrong v. Davis*, 275 F.3d 849, 871 n. 28 (9th Cir.2001) ("Federal Rule of Civil Procedure 23 provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court").

Rule 23(c)(1)(C) recognizes that "before entry of a final judgment on the merits, a district court's order respecting class status is not final or irrevocable, but . . . inherently tentative." *Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 633 (9th Cir. 1982); see also *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n. 11 (1978) (describing a class certification order as "inherently tentative"); *Fair Housing for Children Coalition, Inc. v. Pornchai Int'l*, No. 88-5999, 1989 WL 145401, *2 (9th Cir. Nov. 30, 1989) (Unpub. Disp.) (quoting *Officers for Justice*); *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589, 593 (E.D. Cal. 1999) (same). "Perhaps the main reason for the tentative nature of class status determinations is that they generally involve considerations that are closely tied to the factual and legal issues of the case." *Officers for Justice*, 688 F.2d at 633. A court's ability to reconsider its initial ruling regarding class certification provides the flexibility necessary to ensure

14

that "the full potential benefits flowing from the judicious use of the class action device" are realized. 3 NEWBERG ON CLASS ACTIONS § 7.47 (2008). It guarantees that there is "actual, not presumed, conformance with [Rule 23]. . . ." *Falcon*, 457 U.S. at 160. As a court in this district has observed, reconsideration of a class certification order "serves an important role in the ongoing life of [a] class action," i.e., the opportunity to ensure "the continuing viability of the class action" vehicle. *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 652 (C.D. Cal. 2000).

Decertification is appropriate where "new facts . . . justify such a redetermination." 6A FEDERAL PROCEDURE § 12:296. While certification decisions should not focus on the merits of a plaintiff's claims, "a district court reevaluating the basis for certification may consider its previous substantive rulings . . . , and . . . 'the nature and range of proof necessary to establish the [class-wide] allegations.'" *Marlo v. United Parcel Service*, 251 F.R.D. 476, 479-80 (C.D. Cal. 20008) (citing *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178 (1974)). Because a decertification motion "assists the [c]ourt in performing its role as gatekeeper, or manager, of the class action," it should not be denied simply because it is based on facts or law previously considered. *Slaven*, 190 F.R.D. at 652.

When evaluating whether to decertify a class, "the standard . . . is the same as [for] a motion for class certification: whether the Rule 23 requirements are met." *Marlo*, 251 F.R.D. at 479 (citing *O'Connor v. Boeing North Amer. Inc.*, 197 F.R.D. 404, 410 (C.D. Cal. 2000)). Decertification is an issue that lies within the court's discretion. 6A FEDERAL PROCEDURE § 12:296; see also *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007) ("Rule 23 provides district courts with broad discretion to determine whether a class should be certified and to revisit that certification throughout the legal proceedings before the court. . ."), rev'd on other grounds, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).

## B.    Legal Standard Governing Class Certification

A district court may certify a class only if:

"(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

representative parties will fairly and adequately protect the interests of the class."

FED.R.CIV.PROC. 23(a).

In addition, a district court must find either that at least one of the several conditions set forth in Rule 23(b) is met. As the Supreme Court has explained:

> "Rule 23(b)(1) allows a class to be maintained where 'prosecuting separate actions by or against individual class members would create a risk of' either '(A) inconsistent or varying adjudications,' or '(B) adjudications . . . that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede[ ] their ability to protect their interests.' Rule 23(b)(3) states that a class may be maintained where 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and a class action would be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Dukes*, 131 S. Ct. at 2549 n. 2.

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* at 2551. Thus, "[t]he party seeking certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir.), amended by 273 F.3d 1266 (9th Cir. 2001)); see also *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The class can be certified only if the court "is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Falcon*, 457 U.S. at 160-61.[41]

Although not specifically mentioned in Rule 23(a), there is an additional prerequisite to certification – that the class be ascertainable. See, e.g., *Lukovsky v. San Francisco*, No. C 05-

___

[41]The Supreme Court has noted that "[f]requently . . . 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Dukes*, 131 S. Ct. at 2551.

00389 WHA, 2006 WL 140574, *2 (N.D. Cal. Jan. 17, 2006) ("'Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed,'" quoting *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999)); *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 163 (C.D. Cal. 2002) ("Prior to class certification, plaintiffs must first define an ascertainable and identifiable class. Once an ascertainable and identifiable class has been defined, plaintiffs must show that they meet the four requirements of Rule 23(a), and the two requirements of Rule 23(b)(3)" (citation and footnote omitted)); *O'Connor*, 184 F.R.D. at 319 (holding that a class definition must be "precise, objective and presently ascertainable"); *Bishop v. Saab Auto. A.B.*, No. CV 95-0721 JGD (JRx), 1996 WL 33150020, *4 (C.D. Cal. Feb. 16, 1996) ("To file an action on behalf of a class, the named plaintiffs must be members of the class that they purport to represent at the time the class action is certified. The named plaintiffs must also demonstrate that the class is ascertainable" (citation omitted)).[42]

Once the court determines that a class is ascertainable, it then must examine whether the class meets the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a). If these prerequisites are met, the court must next consider whether the class is maintainable under Rule 23(b). See, e.g., *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("In

---

[42]See also, e.g., *In re A.H. Robbins Co., Inc.*, 880 F.2d 709, 728 (4th Cir. 1989) (same), abrogated on other grounds by *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 477 (S.D. Ohio 2004) ("Before delving into the 'rigorous analysis' required by Rule 23, a court first should consider whether a precisely defined class exists and whether the named plaintiffs are members of the proposed class"); *Robinson v. Gillespie*, 219 F.R.D. 179, 183 (D. Kan. 2003) ("In determining whether to certify a class, the court begins with the proposed definition of the class" because "[a]bsent a cognizable class, determining whether Plaintiffs . . . satisfy the other Rule 23(a) and (b) requirements is unnecessary" (internal quotations omitted)); *Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 346 (S.D. Ga. 1996) ("Before considering the requirements of Rule 23 . . . a court must determine whether a class exists that can adequately be defined. . . . [C]lass definition is an implicit requirement which must be met before a Rule 23 analysis can be undertaken by the district court").

order for a class action to be certified, the plaintiffs must establish the four prerequisites of Fed.R.Civ.P. 23(a) and at least one of the alternative requirements of Fed.R.Civ.P. 23(b)").

Plaintiffs' overtime class was certified as a Rule 23(b)(3) class, which is maintainable where (i) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," *and* (ii) "a class action is superior to other available methods for fair and efficient adjudication of the controversy." FED.R.CIV.PROC. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citing *Amchem Prods.*, 521 U.S. at 614-15). "To satisfy this requirement, it is not enough simply that common questions of law or fact exist; predominance is a comparative concept that calls for measuring the relative balance of common issues to individual ones." *Marlo*, 251 F.R.D. at 483 (citing *Amchem Prods.*, 521 U.S. at 623-24). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser*, 253 F.3d at 1189 (citing *Valentino*, 97 F.3d at 1234).

In determining superiority, the court must consider the four factors set forth in Rule 23(b)(3): (1) the interest class members have in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy that has already been commenced by or against class members; (3) the desirability or undesirability of concentrating litigation of the claims in the particular forum; and (4) the difficulties that will likely be encountered in managing the suit as a class action. FED.R.CIV.PROC. 23(b)(3). The last requirement is commonly referred to as "manageability," and "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." 6A FEDERAL PROCEDURE § 12:244. Questions of manageability "involve[ ] the weighing of the judicial efficiency or benefits the class action will produce against the corresponding administrative complexity that may arise." *Id.* Rule 23 vests wide discretion in the district court to evaluate the manageability of a Rule 23(b)(3) class action. The issue is a question "of fact and a practical problem with which a district court generally has greater familiarity and expertise than does a

court of appeals." *Id.* (footnotes omitted). If a district court certifies a class, but "subsequently . . . becomes convinced that the litigation cannot be managed, the option of decertification is available." *Id.* (citing *In re Sch. Asbestos Litig.*, 789 F.2d 996 (3d Cir. 1986)).

### C. Whether Plaintiffs' Overtime Class Should be Decertified

EDS does not challenge the court's earlier ruling that plaintiffs' overtime class satisfies the numerosity, typicality, or adequate representation requirements of Rule 23(a). The crux of its argument for decertification is a contention that recent developments show that there is no commonality, that common questions do not predominate, and that a class action is not a superior vehicle for resolving class members' claims.

### 1. Commonality

EDS first argues that given the court's summary judgment ruling and the Ninth Circuit's mandate, there is no longer a common question that can be adjudicated on a classwide basis.[43] Commonality requires "questions of law or fact common to the class." See FED.R.CIV.PROC. 23(a)(2). The commonality requirement is construed liberally, and the existence of some common legal and factual issues is sufficient. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1320 (9th Cir. 1982); accord *Hanlon*, 150 F.3d at 1019 ("The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been construed permissively"); see also, e.g., *Ventura v. New York City Health & Hosps. Corp.*, 125 F.R.D. 595, 600 (S.D.N.Y. 1989) ("Unlike the 'predominance' requirement of Rule 23(b)(3), Rule 23(a)(2) requires only that the class movant show that a common question of law or fact exists; the movant need not show, at this stage, that the common question overwhelms the individual questions of law or fact which may be present within the class"). As the Ninth Circuit has noted: "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

That said, the putative class "claims must depend upon a common contention – for

---

[43]Motion at 11.

example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. Although for purposes of Rule 23(a)(2) even a single common question will do, *id.* at 2556, "'[w]hat matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" *Id.* at 2551 (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009)). As the Ninth Circuit recently offered by way of example, "it is insufficient to merely allege any common question, for example, 'Were Plaintiffs passed over for promotion?' Instead, they must pose a question that 'will produce a common answer to the crucial question why was I disfavored.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (quoting *Dukes*, 131 S. Ct. at 2552).

In certifying an overtime class, the court found that the commonality requirement of Rule 23(a) had been satisfied because "EDS's blanket determination that all information technology workers are exempt from overtime requirements suggests that there are common questions of fact and law across the class."[44] The court cited several cases that had found "the commonality requirement of Rule 23(a)(2) . . . satisfied where a putative class of employees challenges the employer's classification of those employees as exempt from [the] overtime requirements under state labor laws." *Sepulveda*, 237 F.R.D. at 242 (collecting cases); see *Maddock v. KB Homes, Inc.*, No. CV-06-05241 CAS (JTLx), 2007 WL 2221030, *4 (C.D. Cal. July 9, 2007) (finding commonality satisfied where the defendant classified all potential class members as exempt from state law overtime requirements); *Krzesniak v. Cendant Corp.*, No. C 05-05156 MEJ, 2007 WL 1795703, *8 (N.D. Cal. June 20, 2007) ("Judges from this district – in recent exempt/non-exempt classification cases involving store manager claims under California law for unpaid overtime and

---

[44]Class Order at 27.

meal and rest period violations – have found sufficient commonality when the following common legal and factual issues were presented: (1) whether the employer properly classified the managers as exempt; (2) whether the managers share similar job duties; and (3) whether the employer violated California Labor Code provisions regarding overtime, meal and rest periods, and wage statements regarding employees' hours of work" (citations omitted)); *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 248-49 (C.D. Cal. 2006) ("several questions relating to the policy of classifying general managers as exempt without an examination of their actual tasks and time spent on those tasks are common questions of law and fact common to the proposed class members"). In deciding plaintiffs' appeal in this case, the Ninth Circuit recognized that the court had not abused its discretion in certifying an overtime class because "the class members shared a common question of law: whether the IT Workers' duties constituted 'work directly related to [the] management policies or general business operations' . . . of EDS or its customers."[45]

EDS does not dispute that it uniformly classifies information technology workers as exempt. It argues, however, that subsequent to the court's certification of a class, the Ninth Circuit issued "bellwether decisions holding that a California overtime misclassification class could not be certified based merely on a showing that the employer classified particular groups of employees as exempt."[46] EDS cites *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953 (9th Cir. 2009), and *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009). In *Wells Fargo*, the Ninth Circuit held that the district court had "abused its discretion in relying on [Wells Fargo's uniform exemption] policy to the near exclusion of other factors relevant to the predominance inquiry." It determined that the district court's approach "create[d] a presumption that class certification is proper when an employer's internal exemption policies are applied uniformly to the employees," and that "[s]uch an approach . . . disregards the existence of other potential individual issues that may make class treatment difficult if not impossible." *Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d at 959. Similarly, in *Vinole*, the court

---

[45]Mandate at 8.

[46]Motion at 12.

concluded that "focusing on a uniform exemption policy alone does little to further the purpose of Rule 23(b)(3)'s predominance inquiry, which requires an assessment of the relationship between individual and common issues. . . . Instead of adopting what would essentially be a bright-line presumption in favor of class certification, we favor an approach that takes into consideration all factors that militate in favor of, or against, class certification." *Vinole*, 571 F.3d at 946. The Ninth Circuit again addressed blanket exemptions in *Marlo v. United Parcel Service, Inc.*, 639 F.3d 942, 948 (9th Cir. 2011), and concluded that "the existence of a policy classifying [a category of workers] as exempt from overtime-pay requirements does not necessarily establish that [those workers] were misclassified, because the policy may have accurately classified some employees and misclassified others."

Although each of these Ninth Circuit decisions addressed Rule 23(b)(3)'s predominance requirement, rather than Rule 23(a)'s commonality requirement, some district courts have relied on them to find that Rule 23(a)'s commonality requirement cannot be satisfied merely by showing that an employer uniformly classifies certain categories of workers as exempt. See *Novak v. Boeing Co.*, No. SACV09–01011–CJC (ANx), 2011 WL 7627789, *5 (C.D. Cal. Dec. 19, 2011) ("As with these prior cases, Plaintiffs have failed to provide any evidence of commonality other than that the employees were all identified as 'Programmer/Analyst, Level 4' and all classified by Boeing as exempt. These common characteristics alone are insufficient to establish that the issue of exemption, the central issue in this case, may be resolved with common proof"); *Chavez v. Lumber Liquidators, Inc.*, No. C–09–04812 SC, 2012 WL 1004850, *5 (N.D. Cal. Mar. 26, 2012) ("The Court finds that none of the 'common questions' offered up by Plaintiffs are capable of class-wide resolution. The only class-wide policy identified by Plaintiffs – the classification of Store Managers as exempt – is insufficient to raise a common question. As Plaintiffs have offered no common proof that Store Managers' job requirements are consistent from day to day or from store to store, the Court would need to engage in an individualized, fact-intensive analysis to determine how each Store Manager spends his or her time").

EDS asserts that these cases preclude a finding of commonality based on a uniform exemption policy. It contends that it will be necessary to "deconstruct" the job duties performed

22

by individual class members to determine whether they are primarily engaged in administrative work, and thus that there will be "myriad fact-specific questions that provide no common answers under *Dukes*."[47]

As noted, at the time it certified a class, the court believed that the central common question in the case was the legal question whether software consultants working for a contractor who provides a service to customers are exempt when performing the work that constitutes that service. As EDS observes, the Ninth Circuit's decision resolves this question conclusively in its favor.[48] There must thus be some other common question – whether of fact or law – that warrants maintaining this case as a class action.

There is no dispute that class members perform different tasks as they work for different EDS customers and perform different duties based on the needs of those customers. Yet EDS classifies all of them as exempt. As the court noted in its original certification order, "[t]o the extent that EDS believes it correctly classified all of the workers as exempt, it presumably relies on common facts or legal theories to justify that decision."[49] At the time of the original certification motion, EDS adduced no evidence that it conducted individualized inquiries regarding class members' job duties before classifying them as exempt. It still has not.

Despite the decisions in *Chavez* and *Novak*, therefore, the court concludes that the

---

[47]*Id.* at 14.

[48]Reply at 1. Plaintiffs argue first that the Ninth Circuit did not resolve the question because it held that some of Dywre's duties were not qualitatively exempt. (Opposition at 8-9.) This misapprehends the nature of the common legal question on which the court relied when it certified a class in 2008. The question on which the court focused was whether the fact that the employees performed tasks that constituted the service EDS sold meant that they could or could not be classified as exempt. Plaintiffs also argue that it does not matter whether the common question is one that is ultimately resolved in favor of, or against, the class. (*Id.* at 8.) While this is true where the question remains unanswered throughout the pendency of the litigation, here the Ninth Circuit has conclusively answered the common question, and it no longer needs to be resolved. Stated differently, it is no longer a question. At this stage of the litigation, therefore, it cannot serve as the basis for maintenance of a class action.

[49]Class Cert. Order at 49.

commonality requirement of Rule 23(a) is satisfied. EDS has a common uniform policy of classifying all information technology workers as exempt, such that they do not receive overtime pay. Whether this uniform classification is or is not justified will be a common answer central to resolution of the class claims as a whole. See *Pryor v. Aerotek Scientific, LLC*, 278 F.R.D. 516, 526 (C.D. Cal. 2011) ( "The court is not wholly convinced that the alleged common policies identified by Pryor justify certification of a class. . . . Nonetheless, *Duke*s made clear that a single common question suffices to establish commonality. Aerotek's witness testified that there were class-wide policies and directives in effect. What these were is a common question that can generate a single answer applicable to the entire class").

EDS's arguments regarding the need for individualized inquiries are more appropriately considered in assessing whether the Rule 23(b)(3) predominance requirement has been met. See *id.* ("The court thus concludes that the commonality requirement is met, and will address Aerotek's arguments regarding dissimilarities among class members in considering the more rigorous predominance requirement"); *Gales v. Winco Foods*, No. C 09–05813 CRB, 2011 WL 3794887, *2, 6 (N.D. Cal. Aug. 26, 2011) (concluding that whether an employer had correctly classified a group of employees as exempt was a common question, but finding that predominance was not satisfied because determining whether each class member spent the majority of his or her time performing exempt duties required an individualized inquiry). The court thus turns to predominance requirement of Rule 23(b)(3).

### 2. Predominance

The predominance requirement of Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a). *Amchem Prods.*, 521 U.S. at 623–24. If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on a representative rather than on an individual basis," and the predominance test is satisfied. *Hanlon*, 150 F.3d at 1022. "'[I]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, [however,] a Rule 23(b)(3) action would be inappropriate.'" *Zinser*, 253 F.3d at 1190 (quoting 7A Charles Alan Wright, Arthur R. Miller

& Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1778, at 535–39 (1986)). This is because, *inter alia*, "the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified." *Id.*

EDS contends the Ninth Circuit determined that some portion of Dwyre's tasks were administratively exempt while others were not, and that the court will now have to engage in "a series of highly fact-specific, person-by-person, week-by-week inquiries to determine whether the hundreds of class members primarily performed exempt job duties."[50] Plaintiffs counter that several common issues of law and fact remain, citing evidence that "(1) class members share the same job titles, job descriptions, job functions, and job codes, (2) all worked in California and were subject to California law, (3) all the alleged violations occurred within the same time period, (4) all class members were subject to the same policies and practices, (5) all these policies and practices were established by the same decision-maker (i.e. Defendant), and (6) all the alleged violations claimed by class members are similar."[51] Plaintiffs' argument is unpersuasive.

In its certification order, the court noted that "[p]laintiffs [did] not dispute that individual information technology workers perform different tasks. They argue[d], however, that there [was] a given universe of tasks, none of which [fell] within the administrative exemption."[52] Based on the Ninth Circuit's decision, it is now clear that some of the tasks performed by Dwyre, while acting as Team Lead, were administratively exempt – tasks such as "assigning and coordinating work, determining schedules, reviewing assignments, and running team meetings."[53] The Ninth Circuit also concluded that information technology workers can be administratively exempt when performing tasks listed in 29 C.F.R. § 541.205(c)(7).[54] The court concluded, however, that a

---

[50]Motion at 4.

[51]Opposition at 11.

[52]Class Order at 46.

[53]Mandate at 7 (citing 29 C.F.R. § 542.205(c)(7)).

[54]29 C.F.R. § 541.205(c)(7) provides: "In the data processing field some firms employ persons described as systems analysts and computer programmers. If such employees are

25

reasonable juror could find that Dwyre was not "primarily engaged in 'qualitatively' administrative work," as he also performed duties that did not "in themselves" constitute administratively exempt tasks, i.e., designing computer systems.[55] On remand, therefore, the issues that must be decided are whether Dwyre performed both exempt and non-exempt tasks, and if so, how much of his time was devoted to exempt, as opposed to non-exempt, work. Where the critical question is how much time each putative class member spends on non-exempt activities, courts have generally concluded that the predominance requirement is not met, since liability turns on a fact-specific analysis of each employee's time. See *Jimenez*, 238 F.R.D. at 252; see also *Gales*, 2011 WL 3794887 at *10 ("Determining 'how the employee actually spends his or her time' would therefore require many individualized inquiries. Accordingly, common questions do not predominate over individualized ones in this case"); *Weigele v. FedEx Ground Package Sys., Inc.*, 267 F.R.D. 614, 622 (S.D. Cal. 2010) (denying class certification where "the amount of time any particular manager spent in any particular area varies greatly"); *Trinh v. JP Morgan Chase & Co.*, No. 07–CV–1666 W(WMC), 2008 WL 1860161, *4 (S.D. Cal. Apr. 22, 2008).

Plaintiffs assert the Ninth Circuit's decision suggests that "computer programming and systems analyst functions are not administratively exempt *as a matter of law*."[56] They further

---

concerned with the planning, scheduling, and coordination of activities which are required to develop systems for processing data to obtain solutions to complex business, scientific, or engineering problems of his employer or his employer's customers, he is clearly doing work directly related to management policies or general business operations."

[55]Mandate at 8.

[56]Opposition at 9 (emphasis original). The court believes plaintiffs misread this aspect of the court's opinion. The Ninth Circuit merely held that the duties of computer programmers and systems analysts described in § 541.205(c)(7) were not "in themselves" qualitatively administrative. The decision leaves open the possibility that such duties can be qualitatively administrative if they involve "the planning, scheduling, and coordination of activities which are required to develop systems for processing data to obtain solutions to complex business, scientific, or engineering problems." (Mandate at 7.)

Plaintiffs also contend that EDS fails to recognize the distinction between "qualitatively" and "quantitatively" administrative work. (Opposition at 5.) The Ninth Circuit held the record supported an inference that Dwyre's non-team lead duties were not qualitatively administrative.

Because Dwyre submitted a declaration stating that he devoted substantially less than 50% of his time to team lead duties, the court concluded that triable issues of fact remained as to whether he had been properly classified. (Mandate at 8.) Based on this discussion, plaintiffs suggest there is a common question as to whether the class performs "quantitatively" administrative work. (Opposition at 6.) This overlooks the fact that the Ninth Circuit did not decide whether Dwyre's non-team lead work was qualitatively administrative, and that it recognized that some types of computer programming and system analyst work can be qualitatively administrative. It also overlooks the fact that to determine whether an individual employee's work is quantitatively administrative, the court will have to examine what class members are or were doing day-to-day to determine if their job duties are or were quantitatively administrative. Work is only quantitatively administrative if it is "of substantial importance to the management or operations of the business." *Rieve v. Coventry Health Care, Inc.*, 870 F.Supp.2d 856, 869 (C.D. Cal. 2012). As the *Harris* Court noted, whether work is of substantial importance turns on whether the work "affects policy," or "execute[s] or carr[ies] out" policy; whether the employee carries out "major assignments in conducting the operations of the business"; or whether his work "affects business operations to a substantial degree." *Harris*, 53 Cal.4th at 181 n.6 (quoting 29 C.F.R. 541.205(c) (2000)). As plaintiffs note, the Ninth Circuit did not specifically address whether Dwyre's non-team lead duties were quantitatively administrative because it concluded that there were triable issues of fact as to whether those duties were qualitatively administrative. The court, in fact, left open the possibility that the duties could be found to be qualitatively administrative if they involved "the planning, scheduling, and coordination of activities which are required to develop systems for processing data to obtain solutions to complex business, scientific, or engineering problems." 2012 WL 2045960 at *2. (citing 29 C.F.R. § 541.205(c)(7)).

At the hearing, plaintiffs argued that the court was collapsing the "quantitatively administrative" and "primarily engaged" standards. The court recognizes that these are separate inquiries. An employee is exempt if he is primarily engaged in administratively exempt work. Work qualifies as administrative when it is "directly related" to general business operations. *Harris*, 53 Cal.4th at 181. Work is "directly related" only if it is both qualitatively and quantitatively administrative. *Id.* Thus, an employee cannot be "primarily engaged" in exempt work unless that work is both qualitatively and quantitatively administrative.

The fact that the inquiries are separate does not effect the outcome of EDS's motion. As noted *infra*, it will be necessary to examine each employee's daily tasks to determine if the employee was engaged in work that was both qualitatively and quantitatively administrative. For example, part of Dwyre's time was devoted to "assigning and coordinating work, determining schedules, reviewing assignments, and running team meetings." (Mandate at 7.) This is very similar to the work performed by Heffelfinger and Hinds that the Ninth Circuit held was quantitatively administrative; the court noted, for example, that Hinds' work was quantitatively administrative because it included "leading and coordinating operations support." (Mandate at 6.) Thus, it is clear that Dwyre and likely other putative class members as well spend some portion of their time performing quantitatively administrative work; as a result, the court will have to examine the daily tasks performed by each individual to determine whether all or part of the employee's work is directly related to business operations. If the court determines that the

argue that, because they are not seeking to certify a "team lead" class, it is unnecessary to focus on "which class members performed qualitatively exempt team lead duties such as those performed by Dwyre."[57] Plaintiffs contend that class members "share the same core job duties and functions," and thus that common questions still predominate.[58] Plaintiffs proffer no evidence regarding the specific tasks performed by class members in varying field locations, however. The simple fact that an employer classifies employees in the same category "does not eliminate the need to make a factual determination as to whether class members are actually performing similar duties," however. *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 603-04 (E.D. Cal. 2008) ("If the duties between class members are similar, the exemption inquiry is likely susceptible to common proof, . . . but if the duties are not sufficiently similar, then the inquiry is unlikely to be susceptible to common proof").

In contrast to its showing at the time of the motion for class certification, EDS has proffered evidence in support of decertification that information analysts are given a different set of responsibilities daily, and that some of the assigned tasks are exempt. Some information technology analysts at Rancho Cordova, for example, function as "technical leads."[59] Technical leads are responsible for "direct[ing] the work of others" on the team, "distributing the technical

employee's work is both qualitatively and quantitatively administrative, it will then have to determine whether the employee was "primarily engaged" in such work. Each of the qualitatively administrative, quantitatively administrative and "primarily engaged" inquiries will turn on the specific tasks performed by each employee and the amount of time the employee spent on each task.

[57]*Id.* To the extent plaintiffs argue that Dwyre is unique in that he acted both as an information analyst and a team lead, this casts doubt on the typicality of his claim and his adequacy as a class representative. As EDS does not seek decertification on these grounds, however, the court need not address the issue.

[58]*Id.* at 12.

[59]Declaration of Sue Quichocho ("Quichocho Decl."), Docket No. 158 (Sept. 24, 2012), Exh. 4, ¶ 7.

duties to the technical team," and "providing supervision" for the team's work.[60]  This is analogous to the work performed by Dwyre that the Ninth Circuit determined was qualitatively administrative – i.e., "assigning and coordinating work, determining schedules, reviewing assignments."[61]  As a consequence, to determine if a particular class member at Rancho Cordova was properly classified, it will be necessary to examine what portion of his or her time was spent on these technical lead tasks.

Similarly, information analysts at the Seaside facility provide high level problem-solving that requires the exercise of individual discretion and judgment.[62]  Still others are involved in designing database architecture for clients – e.g., the customization of a database to meet DOD's needs.[63]  These activities involve the "planning, scheduling, and coordination of activities which are required to develop systems for processing data to obtain solutions to complex . . . problems."[64]  As noted, the Ninth Circuit held that such activities would be qualitatively administrative.  Thus, a fact-specific inquiry regarding the job responsibilities of each class member at Seaside will be necessary to determine whether any of the class member's work is qualitatively administrative, and if so, whether that class member's duties are of sufficient importance to the management or operation of the business that they are quantitatively administrative as well.  If the court finds that both prongs are satisfied, it will then be required to determine whether each employee was primarily engaged in exempt activities.

Class members working at the EDS facility in Irvine, California, "gathered and developed

---

[60]*Id.*

[61]Mandate at 6 ("Dwyre spent part of his time assigning and coordinating work, determining schedules, reviewing assignments, and running team meetings. . . . [D]uties like these fall within the definition of administratively exempt work").

[62]See Declaration of Mike Randall ("Randall Decl.), Docket No. 158 (Sept. 24, 2012), Exh. 3, ¶¶ 24-26.

[63]*Id.*, ¶ 19.

[64]Mandate at 7.

customer requirements," and, "based on discussions they would have with the customer, the Information Analysts would add information to the warranty customer's data base."[65] In assessing the claims of plaintiff Heffelfinger, the Ninth Circuit determined that "maintaining and managing . . . [a] database" qualified as "servicing a business," and was qualitatively administrative work under 29 C.F.R. § 541.205(b).[66] Thus class members in Irvine also appear to perform at least some exempt tasks.[67] Information analysts in San Diego coordinated the development of a new software system, and had the "authority to implement solutions and to create new software to

---

[65]Declaration of Jerry Ferguson ("Ferguson Decl."), Docket No. 158 (Sept. 24, 2012), Exh. 2, ¶ 4.

[66]Mandate at 3. 29 C.F.R. § 541.205(b) provides: "The administrative operations of the business include the work performed by so-called white-collar employees engaged in 'servicing' a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control. An employee performing such work is engaged in activities relating to the administrative operations of the business notwithstanding that he is employed as an administrative assistant to an executive in the production department of the business."

Additionally, in assessing what constitutes work "directly related to [the] management policies or business operations" of EDS's clients, California law directs courts to look to federal interpretive regulations. The state regulations incorporate 29 C.F.R. § 541.201(a), which "provides that the phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee." *Combs*, 159 Cal.App.4th at 1264. Such work "includes, but is not limited to, work in functional areas such as . . . computer network, internet and database administration." 29 C.F.R. § 541.201(b).

California courts that have addressed the question have held that employees engaged in network, internet or database administration perform work "directly related to management policies or business operations." In *Combs*, for example, the court noted that Combs' job consisted, *inter alia*, of "maintaining the well being of [his employer's] network." *Combs*, 159 Cal.App.4th at 1265. Although Combs performed other tasks listed in § 541.201(b), the court based its conclusion regarding the administrative nature of his job in part on Combs' involvement in network administration. *Id*. Thus, the task of maintaining the database at the Irvine facility is "directly related" to business operations as required by the regulations and *Harris*, 53 Cal.4th at 180 ("[W]ork qualifies as 'administrative' when it is 'directly related' to management policies or general business operations").

[67]Mandate at 7.

30

enhance the functionality of the older systems."[68] This to likely qualifies as developing a system "to obtain solutions to complex . . . problems."[69] The pattern is the same across each location EDS describes. As noted, plaintiffs adduce no evidence to the contrary.

Thus, even assuming, as plaintiffs assert, the Ninth Circuit held that computer programming and systems analyst tasks are not qualitatively administrative as a matter of law – a conclusion with which, as noted, the court disagrees – factual questions would remain regarding how much time individual information technology workers spent on those tasks, since the evidence EDS has adduced shows that at least some class members were not engaged exclusively in computer programming. See *Gales*, 2011 WL 3794887 at *8 (finding that "(1) whether certain AM tasks should be characterized as exempt or non-exempt and (2) whether AMs spend more time doing exempt tasks than non-exempt tasks" are distinct questions, and the latter is not susceptible of common sources of proof). Moreover, if the tasks class members perform vary, a class cannot survive merely because the class members have the same job title or code. See *Williams v. Lockheed Martin Corp.*, No. 09cv1669 WQH (POR), 2011 WL 2200631, *13 (S.D. Cal. June 2, 2011) ("In this case, the evidence also shows that the tasks actually performed by proposed class members differ[ed] across the proposed class. Therefore, the question of exemption turns on the nature of the tasks actually performed by class members. The Court concludes that the individualized inquiries are necessary to determine whether class members were properly categorized as exempt" (internal citations omitted)).

Plaintiffs assert that even if the case requires analysis of particularized issues, those issues can be resolved through representative proof.[70] They cite *Pina v. Con-Way Freight, Inc.*, No. C 10–00100 JW, 2012 WL 1278301, *8 (N.D. Cal. Apr. 12, 2012), a case in which the court certified a break class. The *Pina* court found that representative proof was sufficient because

---

[68]Declaration of Kerry McGinnis Davis ("Davis Decl."), Docket No. 158 (Sept. 24, 2012), Exh. 8, ¶ 5.

[69]Mandate at 7 (citing 29 C.F.R. 541.205(c)(7)).

[70]Opposition at 13.

"California law requires employers to maintain records of all information necessary to determine the timing of meal breaks taken by employees," and the defendant had utilized an "automated time-keeping system." *Id.* It concluded that "reference to these records, in addition to representative testimony regarding Defendant's practices, present[ed] a manageable method of adjudicating Plaintiffs' claims on a class basis." *Id.*

*Pina* is distinguishable. Plaintiffs have adduced no evidence that EDS requires employees to keep detailed time logs or that it maintains an automated or other type of detailed time-keeping record, such that representative proof can be supplemented by evidence showing that various work patterns were consistent across the class. The proof would have to be sufficiently specific regarding the tasks performed and time spent performing them that the court could review the records and determine whether each class member spent a majority of his or her time on administrative work.[71] A review of how each employee spent his or her time would require a much more detailed and individualized analysis than analyzing whether a company allowed its employees meal or rest breaks. It is not susceptible of the type of common proof plaintiffs identify.[72]

---

[71]There is some degree of record-keeping at certain EDS locations. (See Quichocho Decl., Exh. 4, ¶ 9 ("EDS employees working on the Medi-Cal account typically record their time in a system known as Plan View. EDS employees working on the Medi-Cal account record their hours on a daily or weekly basis. The typical expectation is that the employees would work 40 hours a week").) It does not establish, however, that employees record anything more than the number of hours they have worked; there is no indication that employees are required to detail the tasks they performed during the hours recorded.

[72]Plaintiffs cite *Munoz v. Giumarra Vineyards Corp.*, No. 1:09–cv–00703–AWI–JLT, 2012 WL 2617553 (E.D. Cal. July 5, 2012), in support of their argument. *Munoz* involved a break class in which plaintiffs relied on employee time records and anecdotal evidence of company policy to prove a violation of the Labor Code. See *id.* at *18. As noted, here there is no evidence that time records exist that would permit the court to determine the types of tasks in which class members engaged or the amount of time devoted to those tasks; yet these are the inquiries in which the court would have to engage to determine the applicability of the administrative exemption. Furthermore, anecdotal evidence would not suffice to show how each class member apportioned her or her time. This type of evidence might perhaps have been adequate had EDS not adduced proof that workers with the same title or job code perform different functions. EDS has adduced such evidence, however, and anecdotal evidence will not suffice to permit the court

32

In short, while the fact that EDS classifies all information technology workers as exempt presents a common issue, a "uniform exemption policy says little about the main concern in the predominance inquiry: the balance between individual and common issues." *In re Wells Fargo*, 571 F.3d at 958. Based on the evidence adduced by EDS, the court finds that individual issues predominate, as resolution of each class member's claim will depend on how he or she personally apportioned time between or among different tasks. This, indeed, was plaintiffs' argument in opposition to EDS's earlier summary judgment motion.

In deciding plaintiffs' original motion for class certification, the court noted that "EDS ha[d] the burden of showing that its employees' job duties constitute[d] exempt work," and concluded that it had "not adequately made [such a] showing."[73] In deciding EDS's summary judgment motion, by contrast, the court determined that EDS had successfully demonstrated that all class members performed administratively exempt work. In reversing the court's entry of summary judgment in EDS's favor on Dwyre's claims, the Ninth Circuit acknowledged that he performed at least some administrative work. It held, however, that there were triable issues of fact as to whether he engaged primarily in qualitatively administrative work. Based on the evidence EDS has now adduced regarding the job responsibilities of information analysts and systems engineers, it appears that an individualized inquiry regarding the nature of each class member's duties, and the amount of time devoted to particular types of tasks, will be necessary to determine whether a class member was properly or improperly classified as exempt during the relevant period. Thus, plaintiffs have failed to demonstrate that common issues predominate.

### 3.    Superiority

"Under Rule 23(b)(3), the court must evaluate whether a class action is superior by examining four factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating

to make the determinations required as a result.

[73]Class Order at 46.

the litigation of the claims in a particular forum; and (4) the difficulties likely to be encountered in the management of a class action." *Edwards v. City of Long Beach*, 467 F.Supp.2d 986, 992 (C.D. Cal. 2006) (quoting *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 469 (N.D. Cal. 2004)).

On balance, this factor weighs in favor of decertification. Plaintiffs contend that decertification will result in repetitious litigation, overburdened courts, and the abandonment of individual claims.[74] For the reasons stated, however, adjudicating the claims in a class action will not achieve markedly greater efficiency. The ultimate issue in this case – whether each class member was or was not properly classified as exempt – cannot be resolved on a classwide basis, but will require individualized analysis of the tasks the employee performed, and the amount of time spent performing them. See *Jimenez*, 238 F.R.D. at 253 ("[B]ecause the issues presented are to be determined based on an individual's experience, testimony will vary from employee to employee. . . . [S]urveys and statistics may establish whether uniform classification was improper but will not be helpful in determining whether each general manager himself was wrongly classified or not"); see also *Velazquez v. Costco Wholesale Corp.*, No. SACV 11–00508 JVS (RNBx), 2011 WL 4891027, *7–8 (C.D. Cal. Oct. 11, 2011) ("Because the Court finds that individual issues predominate over common issues, it is not necessary to address whether a class action is the superior vehicle for adjudicating Plaintiffs' claims. It is worth noting, however, that the difficulties in managing a class action such as this would be great because countless individual witnesses would be needed, resulting in mini-individual trials within a class trial"); *Maddock*, 248 F.R.D. at 248 ("Because the Court concludes that individual issues predominate in the instant case, it is clear that a class action would not be superior to other methods of adjudication. For these reasons, plaintiff's motion for class certification must be DENIED").

Plaintiffs offer no suggestions as to how the individual issues that predominate could be adjudicated to achieve the efficiency and economy that is the goal of certifying a class. Plaintiffs, of course, are not required to submit a trial plan for litigation of a class action. *Sullivan v. Kelly*

---

[74]Opposition at 14.

*Services, Inc.*, 268 F.R.D. 356, 365 (N.D. Cal. 2010) ("Nothing in Rule 23 requires Plaintiff to submit a formal trial plan along with her motion for class certification," citing *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 n. 4 (9th Cir. 2005)). In the absence of one, however, the court cannot envision how it would conduct hundreds of individual inquiries to determine whether some or all of an employee' job was qualitatively and quantitatively administrative, and whether that employee was primarily engaged in administrative work. Although it recognizes that the cost of litigating class members' claims on an individual basis might exceed the potential recovery, the court does not believe that certifying a class is superior since the individual issues to be adjudicated will dominate, result in an unmanageable series of mini-trials, and consume an extraordinary amount of time.

### III. CONCLUSION

For the reasons stated, the court grants EDS's motion to decertify the overtime class.

DATED: February 26, 2013

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE